UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

Jane M. Fearn-Zimmer, Esquire/JFZ-6324
ROTHKOFF LAW GROUP
425 Marlton Pike West
Cherry Hill, NJ 08002
Tel.: (856) 616-2923
Jane@rothkofflaw.com
Attorneys for Plaintiff, Antoinette Fisher

---

Antoinette Fisher, an incapacitated person, :
by and through Joseph Fisher, her power of :
attorney and proposed Guardian Ad Litem, :
:
:
Plaintiff, : **FIRST AMENDED COMPLAINT**
:
vs. :
Elizabeth Connelly, Commissioner, :
New Jersey Department of Human :
Services; Megan Davey, Director, New : CIVIL ACTION NO. 1:16-cv-00720 (JHR-
Department Of Human Services, : AMD)
Division of Medical Assistance and Health :
Services, and Charles Sanfillppo, Director :
Burlington County Board of Social Services :
:
Defendants. :
:

---

Plaintiffs, Antoinette Fisher, a resident of Cinnaminson Center, 1700 Wynwood Drive, Cinnaminson, New Jersey 08707, by way of Complaint against defendants, Elizabeth Connolly, Commissioner, New Jersey Department of Human Services, P.O. Box 712, Trenton, New Jersey; Meghan Davey, Director, New Jersey Division of Medical Assistance and Health Services, P.O. Box 712, Trenton, New Jersey; Charles SanFillppo, Director, Burlington County Board of Social Services, 795 Woodlane Road, Mount Holly, New Jersey 08060, say the following:

## FIRST

1. Jurisdiction is founded upon 28 U.S.C. §1331 and 42 U.S.C. §1983.

## PARTIES

2. The plaintiff, Antoinette Fisher (79), is aged within the meaning of the Medicaid Act. C.F.R. § 435.520; N.J.S.A. § 10:72-3.9(a)(1). She is represented in this action by her son and attorney-in-fact, Joseph Fisher, under a general, durable power of attorney dated August 11, 2014. A copy of the Power of Attorney document is affixed as Exhibit "A" to this Verified Complaint.

3. Joseph Fisher resides at 764 Charles Street, Burlington, New Jersey.

4. An application for Medicaid benefits was filed on behalf of Antoinette Fisher with the defendant, Burlington County Board of Social Services, seeking March, 1 2015, Medicaid eligibility under 42 U.S.C. §1396 et seq.

5. At all times relevant hereto, the plaintiff, Antoinette Fisher, was a residents of New Jersey, and required a nursing home level of care at the time of application.

6. Prior to entering into long term care in Cinnaminson Center in Cinnaminson, New Jersey, on June 1, 2015, Antoinette Fisher resided at 764 Charles Street, Burlington, New Jersey, for many years.

7. For more than two years prior to institutionalization, Antoinette Fisher has been unable to perform her activities of daily living without assistance and required a nursing home level of care.

8. The plaintiff, Antoinette Fisher, is diagnosed with advanced Alzheimer's disease and dementia.

9. The plaintiff, Antoinette Fisher, is the mother of Joseph Fisher.

10. On February 20, 2016, the plaintiff, Antoinette Fisher, was determined by the State of New Jersey to require a skilled nursing level of care.

11. In 2008, Joseph Fisher, the proposed guardian ad litem for Antoinette Fisher, moved into his parents' home at 764 Charles Street, Burlington, New Jersey.

12. Joseph Fisher, the proposed guardian ad litem for Antoinette Fisher, worked from his

parents' home and cared for his parents in the home. He performed audit work as a medical coding consultant and was provided with six to eight weeks to complete a project. He was not required to work an eight hour day. Based on the variations in his work load, he worked while his parents were sleeping and for as little as two hours during the work day. He based his work schedule on his parents' care needs.

13. The proposed guardian ad litem for Antoinette Fisher, Joseph Fisher, performed his work in a home office located in the basement of the family home. He might begin his work at approximately 5:00 a.m. and continued working until his mother awakened, which generally occurred between 8:30 a.m. and 9:00 a.m. After his mother awakened, Joseph Fisher assisted her in rising and would prepare her breakfast and administer her morning medications. Joseph Fisher set multiple wireless doorbells in the family home to track his mother's movements. There was a doorbell on his mother's bed, a doorbell on his mother's walker, a doorbell on the front door and a doorbell in the living room next to his mother's favorite armchair. The doorbell receivers were in his office and bedroom. After his mother ate her breakfast, Joseph Fisher would assist his mother in the bathroom with toileting and dressing. His mother required assistance to lower herself onto the toilet and to raise herself from the toilet. Joseph Fisher assisted her with this. Antoinette Fisher also had issues with ambulation and was as fall risk. Antoinette Fisher shuffled when she used her walker, which presented an increased fall risk. Joseph Fisher provided his mother with 24/7 supervision and cuing. He would cue Antoinette Fisher as to how to move with the walker, how to hold the walker, and he would supervise Antoinette Fisher's use of the walker. This was necessary due to her ambulation issues and her dementia. If Antoinette Fisher fell, Joseph Fisher would assist her. Joseph Fisher would prepare Antoinette Fisher's lunch. He would administer Antoinette Fisher's afternoon medications. If Antoinette Fisher or her husband, Thomas Fisher, had a medical appointment, Joseph Fisher would get Antoinette Fisher dressed for the doctor's

appointment, and would transport Antoinette Fisher in her wheelchair to the medical appointment. Joseph Fisher would also schedule the doctor's visits and would refill any prescriptions. If Antoinette Fisher was scheduled to receive in home medical visits from the therapist, podiatrist or another medical provider, Joseph Fisher would schedule and coordinate the visits. On Tuesdays and Fridays, his sister would come to bathe their mother. At 3:00 p.m., Joseph Fisher would prepare dinner for his mother, and they would eat from 4:00 p.m. to 4:30 p.m. He administered evening medications to his mother and cleaned up the kitchen. His mother would spend the late afternoon in the living room, watching television. Between 7:30 p.m. and 8:00 p.m., his mother would be ready for bed. Joseph Fisher would assist his mother with dressing for bed, toileting, and transitioning into the bed. Additional work might be performed while his mother slept, depending on Joseph Fisher's workload. Joseph Fisher would continue to monitor his mother's condition. He would be aware of any movements Antoinette Fisher might make during the night. If Antoinette Fisher did get up during the night, Joseph Fisher would go to assist her. Joseph Fisher was responsible for his mother's care, monitoring and supervision 24/7, except for approximately eight to twelve hours per week, when he would be relieved by in home health assistants. The home health assistants generally came on the weekend, for up to eight hours and for approximately four hours during the work week. The use of home health aides enabled Joseph Fisher to run errands outside the home which were necessary for the care and well-being of his parents, including shopping for groceries and clothing and refilling his parents' prescription medications.

14. Joseph Fisher's father, Thomas Fisher, died of lung cancer in January, 2015 after a period of illness. Due to his illness, Thomas Fisher was unable to care for his wife, the plaintiff, Antoinette Fisher. After Joseph Fisher's father died, Joseph continued to live in his parents' home and to care for his mother. During the period from 2008 until June 1, 2015, when Antoinette Fisher entered into long-term care at Cinnaminson Center, Joseph Fisher cared for the plaintiff, Antoinette Fisher, in her former

marital home as noted above.

15. Antoinette Fisher's physical and mental condition during the approximately three year period immediately preceding her entry into skilled nursing care was so severe as to require special attention and care due to her advanced dementia and Alzheimer's disease. The plaintiff, Antoinette Fisher, lost the abilities to dress, cook, keep track of her own medications, shop, toilet herself, raise and lower herself from a bed to a chair or onto a toilet, bathe, and could not ambulate without her walker and without constant cuing and supervision.

16. The care provided by Joseph Fisher to his mother, plaintiff, Antoinette Fisher, exceeded normal personal support activities. Joseph Fisher coordinated his mother's day to day care and ensured that his mother received constant 24/7 care on a daily basis, most of which he personally provided. On a daily basis, Joseph Fisher would prepare breakfast for his mother, help her dress and toilet, help her move to the living room, prepare her lunch, snacks and dinner, refill, track and administer her medications, launder her clothes and bed linens, change the bedsheets, wash dishes, help his mother undress and help her go to bed at night. He also shopped for groceries, toiletries and clothing, ran errands, obtained prescription medication refills and made appointments for his mother's medical care, including visits from a nurse practitioner, physical therapists, home health aides, a podiatrist and managed her multiple, chronic medical conditions treated by multiple physicians.

17. The care provided by Joseph Fisher to his mother, plaintiff, Antoinette Fisher, was essential to her health and safety and consisted of activities such as but not limited to, supervision of medication, monitoring of nutritional status and insuring her safety. Antoinette's treating physician confirmed that she required a nursing home level of care by Certification affixed as Exhibit B and this was also established by the certification of Joseph Fisher (Exhibit B) and Antoinette's medical records.

18. By deed dated February 5, 2015, title to the home of the plaintiff, Antoinette Fisher, was

transferred into the name of her son, Joseph Fisher. A copy of the recorded deed is affixed as Exhibit "C."

19.     On March 25, 2015, Antoinette Fisher applied for Medicaid with the Burlington County Board of Social Services.

20.     The defendant, Burlington County Board of Social Services, issued a determination on the Medicaid application for Antoinette Fisher, dated August 10, 2015, but did not mail the subject determination until on or about August 25, 2015, the date the envelope containing the decision was post-marked.

21.     Joseph Fisher, Plaintiff Fisher's son, and the proposed guardian ad litem, received the Medicaid eligibility determination for his mother on about August 26, 2015. The determination found Plaintiff Fisher eligible for Medicaid effective June 1, 2015, subject to a Medicaid penalty period of 568 days running from June 1, 2015 and ending on December 20, 2016. N.J.S.A. § 30:4D-3(i)(15)(b); N.J.A.C. § 10:71-4.10(c)(4). A copy of the Medicaid determination for Plaintiff Fisher is affixed hereto as Exhibit "D." The notice did not address the request for caregiver child status pursuant to 42 U.S.C. § 1396p(c)(2)(A)(iv), despite provision of care for 7 years.

22.     The Medicaid penalty period was imposed for the transfer of the real property located at 764 Charles Street, Burlington, New Jersey, to Joseph Fisher, which the Burlington County Board of Social Services computed to have a fair market value of approximately $189,000. The Medicaid eligibility decision failed to address the requirements of the caregiver child exception that were not satisfied. Plaintiff Fisher was later informed by Defendant BCBOSS that the decision was reached on the basis of the defendants' new "interpretation" that only one child can be responsible for care giving and that child cannot be employed for the 2 years immediately preceding the date of institutionalization. No legal authority supporting this position or "policy" has been provided by defendants.

23. Unless they are enjoined from doing so, defendants will wrongfully deny Plaintiff Fisher the caregiver child exemption and thus eligibility for Medicaid benefits prior to December 20, 2016, due to the imposition of a 568 day Medicaid penalty period for the transfer of Plaintiff Fisher's former home to Joseph Fisher, her caregiver child.

24. A timely request for a Medicaid Fair hearing was filed by the plaintiff on August 27, 2015. The Fair Hearing for Antoinette Fisher is presently assigned to the inactive list pending the outcome of this federal litigation.

25. On or about November 13, 2015, a pre-hearing conference was held prior to the Medicaid Fair hearing with a representative of the Burlington County Board of Social Services.

26. During the pre-hearing conference, a representative of the Burlington County Board of Social Services communicated that Plaintiff Fisher was denied the caregiver child exemption because Joseph Fisher did not personally provide 24/7 care to his mother in her home, due to the fact that he worked from home and utilized in home caregivers from time to time to assist with the care of his mother.

27. By letter dated January 13, 2016, the undersigned counsel for Plaintiff Fisher contacted the Division of Medical Assistance and Health Services and requested documentation for support for the defendants' position that Plaintiff Fisher does not qualify for the caregiver child exception. A copy of the January 13, 2016 letter is affixed as Exhibit E.

28. Plaintiff has repeatedly requested the Burlington County Board of Social Services to state their rationale and authority for their interpretation of the caregiver child exemption, but to date they failed to respond.

## COMMON FACTS

29.     The criteria to qualify for the caregiver child exemption to the Medicaid transfer of assets rule has existed under Federal law since OBRA '93 and for 23 years Defendants have heretofore not required unemployment and only one caregiver, have not prohibited payment by an applicant to third-party caregivers, nor found that the use of a third party caregiver automatically negates caregiver status under the State Medicaid statute or regulations.

30.     42 U.S.C. §1396a(a)(18) mandates that the New Jersey State Medicaid plan "comply with the provisions of 1396p of this title with respect to...transfer of assets" and 42 U.S.C. §1396p(c)(4) mandates that the penalty calculation rules for eligibility must be "in accordance with this section." Further, 42 U.S.C. 1396a(a)(10)(c) mandates that the State plan utilize a single methodology to determine "eligibility" which shall be no more restrictive than the methodology which would be employed under the Supplemental Security Income (SSI) program.

31.     There is an exception to the Medicaid transferof assets rules for a transfer of the house of a Medicaid applicant to his caregiver child. 42 U.S.C. §1396p(c)(2)(A)(iv).

32.     The Federal Medicaid statue has supremacy when States elect to join the Medicaid program. 42 U.S.C. §1396p(c)(2)(A)(iv) provides in pertinent part:

> (2) An individual shall not be ineligible for medical assistance by reason of paragraph (1) to the extent that
>
> (A) the assets transferred were a home and title to the home was transferred to –
>
> (iv) a son or daughter of such individual (other than a child described in clause (ii) who was residing in such individual's home for a period of at least two years immediately before the date the individual becomes an institutionalized individual, and who (as determined by the State) provided care to such individual which permitted such individual to reside at home rather than in such an institution or facility.

65.     New Jersey's State Medicaid Manual document adopts the Federal law provisions

regarding the caregiver child exemption. N.J.A.C. 10:71-4(d)(4) provides in pertinent part:

> (d) However, an individual shall not be ineligible for an institutional level of care because of the transfer of his or her equity interest in a ho me which serves (or served immediately prior to entry into institutional care) as the individual's principal place of residence and the title to the home was transferred to:
>
> 4. A son or daughter of the institutionalized individual...who was residing in the individuals home for a period of at least two years immediately before the date the individual becomes an institutionalized individual and who has provided care to such individual which permitted the individual to reside at home rather than in an institution or facility.
>
> > i. The care provided by the individual's son or daughter for the purposes of this subchapter shall have exceeded the normal personal support activities (for example, routine transportation and shopping). The individual's physical or mental condition shall have been such as to require special attention and care. The care provided by the son or daughter shall have been essential to the health and safety of the individual and shall have consisted of activities such as, but not limited to, supervision of medication, monitoring of nutritional status, and insuring the safety of the individual

33. Despite submission of a Certification of the plaintiff's treating physician, and the caregiver child, attesting to compliance with the caregiver child provisions of 42 U.S.C. §1396p(c)(2)(A)(iv), defendants penalized the home transfers, which the Plaintiff maintains is exempt from the transfer penalty.

34. The defendant, Elizabeth Connolly (Commissioner Connolly), was at all times relevant the Commissioner of the New Jersey Department of Human Services (DHS), which supervises the administration of the Medicaid program in New Jersey. N.J.S.A. 30:4D-3(c).

35. The defendant, Meghan Davey (Director Davey) was at all times relevant the Director of the New Jersey Division of Medical Assistance and Health Services (DMAHS), which is responsible for the administration of the Medicaid program. She reports directly to Commissioner Connolly and exercises supervision over the activities of DMAHS. N.J.S.A. 30:4D-3(d).

36. The defendant, Charles San Fillppo, was at all relevant times the Director of the

Burlington County Board of Social Services, which processes eligibility and post-eligibility Medicaid determinations for residents of Burlington County, New Jersey, pursuant to the directives of the State DMAHS.

37. The defendants, Elizabeth Connolly, Meghan Davey, and Charles San Fillppo, are collectively referred here and after as "defendants."

### FIRST STATEMENT OF CLAIM

38. Plaintiffs, repeat and re-allege Paragraphs 1 through 37 as if more fully set forth herein.

39. Defendants' actions violate the Federal Medicaid Act by failure to state in the decision their "interpretation" of the caregiver child exemption from the Medicaid transfer of assets rules under 42 U.S.C. §1396p(c)(2)(A)(iv) which further violates the due process clause of the Fourteenth Amendment of the United States Constitution.

### SECOND STATEMENT OF CLAIM

40. Plaintiffs repeat and re-allege Paragraphs 1 through 39 as if more fully set forth herein.

41. Defendants' actions violate the Federal Medicaid Act 42 U.S.C. §1396p(c)(1) by using a method to assess resource eligibility which is more restrictive than the SSI methodology which determines eligibility, which further violates 42 U.S.C. §1983 and the Supremacy Clause of the Constitution of the United States.

### THIRD STATEMENT OF CLAIM

42. Plaintiffs repeat and re-allege Paragraphs 1 through 41 as if more fully set forth herein.

43. Defendants' actions violate the Federal Medicaid Act by failing to properly process the Medicaid application of the plaintiffs for Medicaid benefits through the Nursing Home Medicaid Program by creating undue restrictions which create an unfair classification of individuals incapable of utilizing the caregiver child exemption set forth at 42 U.S.C. §1396p(c)(2)(A)(iv) and N.J.A.C. 4:10-71-

4.7(d)4, in violation of the due process clause of the Fourteenth Amendment of the United States Constitution, which provides in pertinent part:

> No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

**WHEREFORE**, Plaintiffs demand judgment against all defendants as follows:

a) Enjoining defendants from "interpreting" the Federal and State caregiver child statute and regulation to require only one caregiver, who must be unemployed for two years prior to applicant's institutionalization, that the plaintiff cannot pay for third party caregivers without disqualifying the caregiver child from the exemption set forth in 42 U.S.C. §1396p(c)(2)(A)iv.

b) Ordering defendants to redetermine Plaintiff's Medicaid application in accordance with the Federal Medicaid Act pursuant to 42 U.S.C. 1396p(c)(2)(A)(iv), and granting eligibility and exemption of the home transfer from the transfer of asset rules without imposing a transfer penalty.

c) Awarding Plaintiff attorney's fees and costs pursuant to 42 U.S.C. 1988 and 1983.

d) Awarding such other relief as the Court may deem just and equitable.

Dated: December 6, 2016            ROTHKOFF LAW GROUP

By: /s/ Jane M. Fearn-Zimmer, Esq./JFZ6234
ROTHKOFF LAW GROUP
425 Marlton Pike West
Cherry Hill, N.J. 08002
Tel.: 856-616-2923
jane@rothkofflaw.com
Attorneys for Plaintiff Antoinette Fisher